**Paul M. MUSIKOV, Plaintiff,**

v.

**The UNITED STATES SECRETARY OF DEFENSE et al., Defendants.**

No. 4–72 Civ. 589.

United States District Court,
D. Minnesota,
Fourth Division.

April 3, 1973.

Oakes, Metcalf & Palm, by Richard T. Oakes, Minneapolis, Minn., for plaintiff.

Robert G. Renner, U. S. Atty., by Stephen G. Palmer, Asst. U. S. Atty., for defendants.

NEVILLE, District Judge.

Plaintiff Paul M. Musikov is a Naval Reservist who has brought this action to obtain a writ of habeas corpus and in effect to cancel his orders to report to active duty. The factual setting surrounding his involuntary activation is set forth in this court's order of December 29, 1972. In short, plaintiff stopped attending the required drills approximately seven months prior to the scheduled date of expiration of his enlistment contract in the Ready Reserve.[1] Because he accumulated more than the allowed total of five unexcused absences in a given year, he was attempted to be activated for a period of nineteen months in accordance with the applicable statute, 10 U.S.C. § 673a, and Navy Regulations. Musikov's original complaint alleged that his enlistment contract, executed on October 28, 1966, provides for involuntary activation for a maximum period of 45 days in the event his partic-

ipation in the Reserve program was unsatisfactory. He contended that 10 U. S.C. § 673a, passed by Congress after his enlistment which allows in this case for a nineteen month activation period, is unconstitutional as applied to him. The court, in its order of December 29, 1972, rejected this contention on the basis of well established case law and granted defendants' motion to dismiss with respect to this issue. At the prior hearing, however, plaintiff's counsel raised a new issue, to which the government interposed no objection. Plaintiff's counsel argued that plaintiff's Ready Reserve enlistment was due to expire on October 27, 1972; that his orders to report for active duty were actually made or "cut" October 24, 1972; that they were sent by registered mail and plaintiff did not receive them until October 28, 1972 or thereafter; that therefore the orders were void having arrived a day after he was scheduled to complete his obligation. Inasmuch as the contention was not raised in the pleadings and the government was not prepared to argue the point, the court set down an additional hearing date to consider the following three questions:

(1) a factual question as to exact dates.

(2) a factual question whether the Navy followed its own rules and regulations as to timeliness, manner of notice, etc.

(3) a legal question as to whether the effective date of the order to report to active duty was the day the orders were "cut" or the time received.

The second hearing was held as scheduled on January 19, 1973. Each side called one witness. The government called Chief Petty Officer Robert Jarnagin who supervises the records of plaintiff's reserve unit. Jarnagin testified that Musikov accumulated a total of six-

---

1. In this court's order of December 29, 1972 the expiration date of plaintiff's enlistment is erroneously stated to be October 28, 1972. It became clear on this subsequent hearing that October 27, 1972 was the last day of the period of plaintiff's enlistment contract.

teen unexcused absences in the year prior to his attempted activation, including two on February 13, 1972, two on March 12, 1972, four on April 15–16, 1972, four on August 12–13, 1972, and four on September 16–17, 1972—a number well in excess of the authorized five unexcused absences per year. Chief Petty Officer Jarnagin also testified that in his opinion the Navy complied with its own regulations governing involuntary activation. It is not clear from the record whether plaintiff was notified of an apparent change in training regulations in December, 1971 which precluded Reservists from making up unexcused absences after June 30, 1972. This question would seem to be moot, however, because there is no evidence that plaintiff offered to make up the missed drills in question. Plaintiff's attorney did not attempt to controvert, either in his cross-examination of Chief Petty Officer Jarnagin or in his brief, the government's assertion that the Navy followed its own regulations.[2] Plaintiff Musikov testified briefly in his own behalf. The salient portion of his testimony consisted of his corroboration of the dates concerning the actual receipt of the activation orders. The Navy did not contest the fact that the activation orders were "cut" on October 24, 1972, that Musikov's enlistment was due to expire on October 27, 1972, and that the orders were not received at least until October 28, 1972.

Since the plaintiff has not disputed in any material respect that the Navy has followed its own regulations and the Navy has not questioned the applicable dates, the court is left with the legal question of whether the activation orders were lawfully binding on Musikov when they were "cut" and dated or when they were actually received. No cases were cited by either counsel on this issue, nor was any reference made to any applicable Naval regulations. It is the court's view, however, that under ordinary principles of due process receipt unless excused by extraordinary circumstances is essential to the very concept of a lawful order. An enlistee or sailor cannot be expected to obey or follow that which he has not been instructed to do. Section 29.13c(7)(b) of Chapter One of the Navy's Enlistment Transfer Manual, entitled "Issuance of Active Duty Orders", requires detailed precautions to insure the actual receipt of active duty orders. Personnel who are not members of a drilling unit must be notified of active duty orders by registered mail, return receipt requested. In addition, the Navy sends such personnel a form letter and a pre-addressed return envelope to acknowledge actual receipt of the activation orders. If the return letter is not received by the Navy within ten days, this same regulation requires that the Navy "shall take appropriate steps *to ensure receipt and acknowledgement* of the orders by the Reservist (emphasis added)." The regulations are equally explicit for members of drilling units, such as plaintiff Musikov. Section 29.-13(c)(7).(b) states that "Orders to active duty for personnel who are members of drilling units will be forwarded to the Commanding Officer of that unit by the Commandants/CNARESTRA *to be delivered to the Reservist* (emphasis added)." Page 512 of Section 29 of the Regulations contains a copy of the "Statement of Receipt of Active Duty

---

2. The court notes, however, that government's exhibit 2, an excerpt from the Bureau of Naval Personnel Manual, § 1040400, provides in paragraph 4: "Requests for orders to active duty for members who are unsatisfactory in participation shall be submitted to the Chief of Naval Air Reserve Training or the naval district commandant, as appropriate. Promptness in processing these requests is essential and a *delay of more than 30 days* *after the reservist becomes unsatisfactory is considered excessive* (emphasis added)." The court is of course not in sympathy with unsatisfactory participation by Reservists, but does not understand the Navy when it delays activation processing in violation of its own regulations until the very last minute. Plaintiff's participation became unsatisfactory no later than April yet no action was taken until after the September drills.

Orders by Naval Reservists attached to Drilling Units" which is to be used to acknowledge delivery of the orders to the Reservist. The elaborate precaution required by these regulations indicate to the court an awareness on the part of the Navy that active duty orders for a Naval Reservist subject to involuntary activation must be received to be effective.

Once the court finds as above that the orders were not effective until received on October 28, 1972, it must follow that plaintiff was not subject to activation in light of the fact that his Ready Reserve obligation was due to expire on October 27, 1972. The court assumes by the very issuance of the active duty orders that plaintiff did not receive a formal discharge from the Ready Reserve. The absence of a formal discharge notwithstanding, the court holds that plaintiff was no longer subject to involuntary activation for unsatisfactory participation once his Ready Reserve enlistment contract had expired.

Paragraph three of plaintiff's enlistment contract states:[3]

"I will remain a member of the Ready Reserve as defined in Title 10, U. S. Code for the six-year period of my enlistment. As a Ready Reservist, I am liable for active duty either in time of war, in time of national emergency declared by the Congress or proclaimed by the President, or when otherwise authorized by law."

The Bureau of Naval Personnel Manual, ¶3850300(2)(a) entitled "Discharge of Naval Reserve Enlisted Personnel on Inactive Duty", additionally provides:

Enlisted members shall, if otherwise eligible therefor, be discharged as of the date of expiration of enlistment, or as of the date of expiration of enlistment as voluntarily or involuntarily extended.

Here the active duty orders did not become effective on October 28, 1972, the day after the six-year term of enlistment had expired. Therefore, plaintiff

was not activated nor his enlistment properly extended during the six-year period of enlistment and so to subject him to activation, would violate the terms of his enlistment contract and contravene at least the spirit if not the letter of the Navy regulations. To rule otherwise would permit orders to be cut "in camera" and to be made effective without a reservist's knowledge or receipt.

In summary, the court finds that plaintiff's orders could not become effective until he received them on October 28, 1972; and, as he was due to complete his Ready Reserve obligation on the previous day, those orders cannot operate to extend involuntarily his enlistment. The court has made its separate order accordingly.

---

3. See attachments to plaintiff's complaint.